UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELE LYNN PRICE,

     Plaintiff,

v.                         CASE No. 8:13-CV-1393-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____

ORDER

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1] Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-three years old at the time of the administrative hearing and who has a twelfth-grade education in special education classes, has worked as a fast food worker (Tr. 13-14, 34). She

_____

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 17).

filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to learning and hearing problems (Tr. 186). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "status post motor vehicle accident with back injury" (Tr. 55). She concluded that, with this impairment (Tr. 58):

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant is able to carry out and understand simple one to two step task[s]. She is able to understand and follow both written and spoken instructions. The claimant would need to be in a low-stress environment[] where there is little change. She should be in a task oriented rather than production-paced environment. She can interact appropriately with others. The claimant would need a sit/stand work option.

The law judge also considered, among other alleged ailments, the plaintiff's learning disability (Tr. 56). Although the law judge found that it was a non-severe impairment, she included in the residual functional capacity substantial

mental functional limitations (see Tr. 58). The law judge determined that the plaintiff's restrictions prevented her from performing past work (Tr. 62). However, based upon the testimony of a vocational expert, the law judge found that there are jobs existing in significant numbers in the national economy that the plaintiff could perform, such as parking lot attendant, mail clerk, and routing clerk (Tr. 63). Accordingly, the law judge ruled that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. <u>See</u> 20 C.F.R. 404.1520, 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f).  If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy.  20 C.F.R. 404.1520(g), 416.920(g).

## III.

The plaintiff's grounds for challenging the decision are that the law judge: (1) failed to consider whether the plaintiff met listing 12.05 C (concerning mental retardation), (2) did not consider the combination of her impairments and their severity, (3) erred in giving little weight to the opinion of her chiropractor, and (4) failed to include all of her limitations in the residual functional capacity (Doc. 19, p. 1).  None of those arguments is meritorious.

A. The plaintiff argues first that the law judge failed to consider whether the plaintiff met listing 12.05 C for mental retardation (id., pp. 11-12).[2] See 20 C.F.R. Part 404, Subpt. P, Appx. 1. That listing states:

> 12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; ....

Notably, a condition in Appendix 1 is considered so severe that a plaintiff who meets, or equals, a listing is deemed disabled without regard to vocational considerations. Wilkinson o/b/o Wilkinson v. Bowen, 847 F.2d

---

[2]On August 1, 2013, the Social Security Administration amended listing 12.05 by replacing the words "mental retardation" with "intellectual disability." Hickel v. Commissioner of Social Security, 539 Fed. Appx. 980, 982 n. 2 (11th Cir. 2013), citing 78 Fed. Reg. 46,499, 46,501. This nominal change does not affect the definition of the disorder. For consistency with the parties' memoranda, the disorder is referred to as mental retardation in this Order.

660, 662 (11th Cir. 1987). Thus, the issue of whether the plaintiff meets, or equals, a listing comes at the third step in the sequential analysis before the issues of whether the plaintiff can return to prior work (step four), or perform other jobs in the national economy (step five). See 20 C.F.R. 404.1520, 416.920. The plaintiff bears the burden of showing that she meets, or equals, a listing. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987); Perkins v. Commissioner of Social Security, 553 Fed. Appx. 870, 872 (11th Cir. 2014).

The law judge found that the plaintiff did not meet, or equal, an Appendix 1 listing (Tr. 58). In this regard, the law judge stated that "no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to any listed impairment [in] the Listing of Impairments" (id.). Although the law judge did not specifically mention listing 12.05, she was not required to do so. See Prince v. Commissioner of Social Security, 551 Fed. Appx. 967, 969 (11th Cir. 2014); Battle v. Astrue, 243 Fed. Appx. 514, 519-21 (11th Cir. 2007). Further, the conclusion that the plaintiff did not meet listing 12.05 C was reasonable

because no doctor opined that the plaintiff meets, or equals, listing 12.05, nor does the evidence compel such a finding.

The plaintiff, citing to her Wechsler Adult Intelligence Scale-Third Edition (WAIS) scores of 65 (verbal), 81 (performance) and 70 (full scale), argues that she met one of the criteria for listing 12.05, and that the law judge did not properly consider that evidence because the law judge stated erroneously that intelligence quotient testing had not been done (Doc. 19, pp. 11-12; see Tr. 314).[3] In this regard, the plaintiff cites to the law judge's statement that, "Dr. Merin concluded that although the claimant was not formally tested, her intellectual abilities were estimated to fall within the borderline range" (Tr. 57). Dr. Jeffrey M. Merin administered to the plaintiff the WAIS, as well as the Wide Range Achievement Test-4th Edition, and the Vineland Adaptive Behavior test, and assessed the plaintiff with borderline intellectual functioning (Tr. 313-18).

Initially, it is improbable that the law judge was unaware of the plaintiff's cognitive testing because the law judge reviewed Dr. Merin's

---

[3]Although the plaintiff's testing occurred after age 22, there is a presumption that such results remain constant throughout life. Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001).

psychological report, which included the plaintiff's test scores and an analysis of those results (id.).   Thus, the law judge discusses in the decision Dr. Merin's psychosocial report, and cites from the report verbatim (see Tr. 56-57, 60).   Moreover, the law judge "gave great weight to the Psychosocial Report completed by Dr. Jeffrey Merin" (Tr. 60).   Therefore, it is not plausible that the law judge read and accepted Dr. Merin's report, but missed the formal testing results contained therein.

Notably, the comment that the claimant was "not formally tested" but "her intellectual abilities are estimated to fall within the Borderline Range"was made by consultative psychological examiner Dr. Tracey Henley in her psychological evaluation (Tr. 409).   Therefore, it appears that the comment was misattributed to Dr. Merin.   Moreover, the comment was simply that Dr. Henley did not formally test the plaintiff.   A similar comment appears in the consultative psychological report of Dr. Steven Abraham (Tr. 483-84).   Those statements merely reflect that neither consulting psychologist formally tested the plaintiff; they do not indicate that there was no testing done by anyone.   The law judge obviously was aware that testing had been done since he reviewed Dr. Merin's report and could not

miss the test scores (see Tr. 314). In other words, the law judge's error was simply in misattributing Dr. Henley's comment to Dr. Merin; it was not in thinking that no formal testing had been done. Consequently, the basic premise for the plaintiff's contention is mistaken.

In all events, the plaintiff's IQ scores are insufficient, in themselves, to show that the plaintiff met a cognitive listing. First, Dr. Merin assessed the plaintiff with borderline intellectual functioning, not mental retardation (see Tr. 57, 318). As the Commissioner notes (Doc. 22, p. 13), a diagnosis of borderline intellectual functioning is "mutually exclusive of mental retardation," as the mental deficits are less severe. Jordan v. Commissioner of Social Security, 470 Fed. Appx. 766, 768-69 (11th Cir. 2012) (citing Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 47-48, 741 (4th ed. text rev. 2000)). The law judge gave Dr. Merin's report "great weight" (Tr. 60) and, therefore, accepted his assessment of borderline intellectual functioning. Additionally, non-examining reviewing psychologist Sheldon Levy specifically noted the plaintiff's IQ scores, but did not opine that the plaintiff met a listing (see Tr. 442-54).

The plaintiff, furthermore, acknowledges in her brief that a valid IQ score is only one of several criteria necessary to meet Listing 12.05 C (Doc. 19, p. 12). Thus, in order to meet a listing for mental retardation, "[a] claimant must satisfy both 'the diagnostic description in the introductory paragraph and any of one' several additional criteria." Jordan v. Commissioner of Social Security, supra, 470 Fed. Appx. at 768. The introductory paragraph requires "significantly subaverage intellectual functioning with deficits in adaptive functioning." Id. In short, "[t]o be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (emphasis added); see, e.g., Smith v. Commissioner of Social Security, 535 Fed. Appx. 894, 897 (11th Cir. 2013) ("[E]ven though she was diagnosed with borderline intellectual functioning, this diagnosis alone was insufficient to meet the criteria of Listing 12.05(C).").

"Adaptive functioning" refers to how effectively an individual copes with the common demands of life, and how well the individual meets

the standards for personal independence expected for someone of her age and background. Hickel v. Commissioner of Social Security, 539 Fed. Appx. 980, 983 n.4 (11th Cir. 2013) (citing Diagnostic and Statistical Manual of Mental Disorders IV-TR at 42 (4th ed. 2000)).[4] This involves an examination of the plaintiff's mental, academic, social and personal skills. Id. The plaintiff, furthermore, must have substantial deficits in adaptive functioning to meet a listing. See, e.g., Garrett v. Astrue, 244 Fed. Appx. 937, 939 (11th Cir. 2007) (adaptive functioning deficits not present despite low IQ score because the plaintiff cooked simple meals, performed household chores, attended church, and had hobbies); Hickel v. Commissioner of Social Security, supra, 539 Fed. Appx. at 984 (the plaintiff did not meet the listing because she had no limitations in self care, could prepare simple meals, had friends, works part-time, drives, attends church and graduated from high school in special education classes); Harris v. Commissioner of Social Security, 330 Fed. Appx. 813, 815 (11th Cir. 2009) (deficits in adaptive functioning did not meet

---

[4]Leading professional organizations have different methods of measuring deficits in adaptive functioning. The Social Security Administration allows use of any of the measurement methods recognized and endorsed by professional organizations. See 67 FR 20022, 2002 WL 661740 (2002).

Listing 12.05 because the plaintiff held jobs, took care of his personal needs, was able to communicate, read, and do simple math).

Although the plaintiff acknowledged the requirement of deficits in adaptive functioning, she made no attempt to demonstrate that she had such deficits (see Doc. 19, p. 12). That failure, alone, is a sufficient basis to reject this argument because the Scheduling Order and Memorandum Requirements cautioned the plaintiff that she forfeits any argument which she does not properly "support[] by citations to the record of the pertinent facts and by citations of the governing legal standards" (Doc. 15, p. 2). See McSwain v. Bowen, supra, 814 F.2d at 619 (the plaintiff bears the burden of showing that she meets, or equals, a listing).

Regardless, the law judge conducted a comprehensive evaluation of the plaintiff's adaptive functioning in connection with the plaintiff's allegations of disabling mental limitations, and the decision clearly reflects that the law judge did not find the plaintiff had deficits in adaptive functioning that are necessary to meet Listing 12.05.[5] Thus, the law judge

---

[5]The plaintiff makes no argument, and the evidence does not support the finding, that her mental impairments were "functionally equivalent" to the listings. See 20 C.F.R. 404.1526(a), 416.926(a).

concluded that the plaintiff's mental deficits were mild (Tr. 57), and were accommodated by limiting the plaintiff to work with simple one or two step tasks, a low stress environment with little change, and a task oriented, rather than production paced environment (Tr. 58).

In this regard, the law judge set forth the five-step sequential analysis and, in evaluating the plaintiff's mental impairments, appropriately discussed the four broad functional areas identified by the regulations to determine, among other things, whether the plaintiff's mental impairments were severe enough to meet a listing (Tr. 54-55, 58).   20 C.F.R. 404.1520a(c)(3), 416.920a(c)(3). The law judge found that the plaintiff had no limitation in the activities of daily living; no limitation in social functioning; a mild limitation in concentration, persistence and pace; and no episodes of decompensation of extended duration  (Tr. 57). Consequently, the law judge concluded that the plaintiff's  mental impairments were non-severe (id.).  20 C.F.R. 404.1520a(d)(1), 416.920a(d)(1).  The law judge elaborated that, although the plaintiff has some mental symptoms, they are "certainly not at a level that they are disabling" (Tr. 57). *A fortiori*, the law

judge did not find that the plaintiff exhibited deficits in adaptive functioning that are necessary to satisfy Listing 12.05 C.

The law judge, furthermore, discussed in detail the basis for her determination.   Thus, as the law judge noted, the plaintiff worked at McDonald's for several years as a crew trainer until she lost the job due to physical, not mental, limitations (Tr. 59, 313, 369, 408, 477, 483).   With regard to her daily activities, the plaintiff reported spending time with her fiancé and friends, and had no problems with personal care or household chores (Tr. 409, 482).   Additionally, the plaintiff reported cooking meals, driving, grocery shopping, and she was active in church, managed her own money, and had hobbies such as riding motorcycles and scrapbooking (Tr. 57, 409, 481, 482, 492, 534, 541).   Further, although the plaintiff was enrolled in special education classes as a child, she has basic reading and mathematic skills and there is evidence that she received a completion certificate from high school (Tr. 315, 316).   Notably, the record reflects that, just two months before the law judge issued her decision, the plaintiff was in a GED program (where she was reportedly earning grades of mostly A's and B's), performing

volunteer work, and was seeking a part-time job (Tr. 409, 483, 520, 528-29, 541).

Moreover, the law judge also considered the observations and opinions of consultative psychologists Dr. Abraham and Dr. Henley (Tr. 57, 61). Dr. Abraham observed that the plaintiff was cooperative with a positive attitude, was oriented x3, she had fair concentration and adequate memory, her thought content was unremarkable and her mental computation was only mildly impaired (Tr. 481, 484). Similarly, Dr. Henley observed that the plaintiff was cooperative and pleasant, oriented x3, her attention and concentration were good, memory and language skills were intact, slight articulation difficulties, and no thought disorders (Tr. 408, 409). The law judge also noted, but did not rely upon as dispositive, that the plaintiff's GAF scores primarily fell between 68 and 75, which reflects little to no difficulty in social, occupational, or school functioning (Tr. 56-57, n.1; see Tr. 409, 483).

Notably, the uniform opinions of the consultative examiners that the plaintiff has the less severe diagnosis of borderline intellectual functioning, rather than mental retardation, also buttresses the conclusion that

the plaintiff is able to adequately manage normal activities of daily living. In sum, the law judge recounted in the decision several circumstances that negated the required showing of "deficits in adaptive functioning." See 20 C.F.R. Part 404, Subpt. P, Appx. 1. Accordingly, ample evidence shows that the plaintiff did not have deficits in adaptive functioning severe enough to meet listing 12.05 C.

As indicated, the plaintiff did not identify in this argument any evidence of deficits in adaptive functioning. Rather, the plaintiff's argument relies upon the absence from the decision of an express reference to listing 12.05 and her specific IQ scores. However, the omission of the plaintiff's IQ scores and reference to listing 12.05 does not, in itself, constitute reversible error. Battle v. Astrue, supra, 243 Fed. Appx. at 519-21. Thus, a law judge's finding as to whether a claimant "meet[s] a listed impairment may be implied from the record" and "it is not required that the [law judge] mechanically cite the evidence leading to her determination." Prince v. Commissioner of Social Security, supra, 551 Fed. Appx. at 969, quoting Hutchinson v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (by reaching the fourth and fifth steps of the

sequential analysis it was implicit that the law judge found the plaintiff did not meet a listing).

Thus, the plaintiff in Battle asserted, similar to the argument made by the plaintiff here, that reversal of the Commissioner's decision was warranted because the decision did not specifically mention the 12.05 listing or the IQ score. 243 Fed. Appx. at 519. The Eleventh Circuit rejected that argument, finding that it was implicit in the law judge's decision that the plaintiff did not meet listing 12.05, as the law judge acknowledged that the plaintiff was at the borderline range of intellectual functioning, but that the plaintiff had not shown the necessary deficits in adaptive functioning. Id. at 521.

Similarly, in this case, the law judge acknowledged, and accepted, Dr. Merin's opinion that the plaintiff had borderline intellectual functioning (see Tr. 57, 60). Further, as discussed supra, pp. 16-18, the law judge discussed in detail the plaintiff's mental functioning, which shows that she does not have the deficits in adaptive functioning that are necessary to meet listing 12.05. Therefore, the plaintiff has failed to show that the law judge committed reversible error with regard to whether she met listing 12.05.

-19-

B. Next, the plaintiff argues that the law judge failed to consider the severity of all her impairments and the effect that the combination of impairments had on her ability to work (Doc. 19, pp. 12-15). This argument is meritless.

Initially, it is noted that the law judge acknowledged in the decision her obligation to consider the combined effects of the plaintiff's impairments (Tr. 54-55). Thus, the law judge recognized that, in determining the residual functional capacity, she "must consider all of the claimant's impairments, including impairments that are not severe" (id.). Further, the law judge found that the plaintiff did not have a "combination of impairments" that met a listing (Tr. 58). These statements show that the law judge did consider the plaintiff's impairments in combination. See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002); see also Tuggerson-Brown v. Commissioner of Social Security, __ Fed. Appx. __; 2014 WL 3643790 at *2 (11th Cir.) (the law judge's statement that he considered all the impairments, including those that are non-severe, shows that the law judge considered all necessary evidence).

The residual functional capacity finding demonstrates that the law judge's considered the combination of the plaintiff's impairments. Specifically, the law judge found (Tr. 58):

> the claimant retains the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant is able to carry out and understand simple one to two step task[s]. She is able to understand and follow both written and spoken instructions. The claimant would need to be in a low-stress environment[] where there is little change. She should be in a task oriented rather than production-paced environment. She can interact appropriately with others. The claimant would need a sit/stand work option.

Thus, the residual functional capacity contains both physical and mental functional limitations, and shows that the law judge incorporated limitations associated not only with the plaintiff's severe impairments, but non-severe mental impairments as well.

The plaintiff, moreover, does not identify in this argument any functional limitation that the law judge failed to include in the residual functional capacity as a result of any purported failure to consider the plaintiff's impairments in combination, and she certainly has not cited any

evidence that compels a finding of a more restrictive residual functional capacity. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027.

The plaintiff, instead, argues that she has a history of anxiety and depression "that should have been noted" by the law judge, and that those conditions interfere with her ability to work (Doc. 19, pp. 13, 14). However, the law judge not only noted the plaintiff's testimony that she suffers from depression and stress and that she receives mental health treatment, the law judge specified that she "considered the claimant's [diagnosis] of adjustment disorder mixed with anxiety and depressed mood" (Tr. 57, 59-60). The law judge, furthermore, went on to explain why she found those conditions were not disabling (Tr. 57). Among other things, the law judge noted that Dr. Henley and Dr. Abraham observed that many aspects of the plaintiff's mental status evaluation were normal, and that Dr. Henley assessed her with a GAF of 68, which also suggests few impairing symptoms (Tr. 57, 61). The plaintiff does not acknowledge this explanation, and certainly does not undermine it.

Furthermore, the plaintiff makes no effort to show how depression and anxiety create a specific functional limitation beyond the law

judge's residual functional capacity finding. Thus, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra.

In this regard, the plaintiff merely argues that, due to depression and anxiety, she is emotional and cries, and that Dr. Merin opined the plaintiff needed a structured job (Doc. 19, p. 14). To the extent that the plaintiff argues that her emotions precluded her from working, the law judge was not required to accept that contention because he did not find the plaintiff's testimony fully credible, and that determination is unchallenged. Furthermore, the law judge acknowledged Dr. Merin's opinion that the plaintiff needed to work in a structured environment, and gave Dr. Merin's opinions great weight (Tr. 56, 60). The plaintiff makes no argument that the law judge's residual functional capacity that limits her to "simple one to two

step task[s]," "in a low-stress environment[]" that is "task oriented rather than production-paced" and where "there is little change" (see Tr. 58) does not accommodate that opined limitation. Therefore, this argument is unpersuasive.

The plaintiff also contends in this argument that she suffers from headaches, and that the law judge erroneously found that "there is not enough evidence in the record of treatment for headaches" (Doc. 19, pp. 13, 14). The law judge does not disagree that the plaintiff experiences headaches; rather, she concluded that they did not interfere with the plaintiff's ability to work. 20 C.F.R. 404.1521(a), 416.921(a) (a non-severe impairment is one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities"). The plaintiff does not cite any evidence of how her headaches interfered with her ability to work, or argue any additional limitations that should have been included in the residual functional capacity as a result of that impairment. See Doc. 15 (the plaintiff must support her contentions with citations to the record of the pertinent facts).

The plaintiff also inserts into this argument the irrelevant comment that the law judge should not discount the severity of an alleged

impairment due to a lack of treatment where finances preclude such treatment (Doc. 19, p. 13). The plaintiff does not cite to any evidence in the record that, due to her finances, she was unable to receive treatment for headaches or her mental impairments. To the contrary, the record reflects that the plaintiff went to Good Samaritan Free Clinic for her physical ailments and received mental health treatment from Peace River Center (see, e.g., Tr. 518, 528). Therefore, this argument fails.

C. The plaintiff's next argument is that the law judge erred in giving little weight to the "records of the claimant's treating physician, Dr. [John W.] Hopkins" (Doc. 19, pp. 15-18). This argument is meritless.

As pertinent here, Dr. Hopkins, a chiropractor, treated the plaintiff in December 2009 until August 2010 for neck and back pain following a motorcycle accident (see Ex. 5F, Tr. 367-405). Dr. Hopkins cleared the plaintiff to return to work in April 2010 with a weight lifting restriction of 15 pounds due to "injuries sustained in a [m]otorcycle accident" (Tr. 397).

In January 2012, one and one-half years after the plaintiff ceased treatment with Dr. Hopkins, Dr. Hopkins completed a Physical Residual

Functional Capacity Questionnaire ("Questionnaire") in which he opined that the plaintiff is essentially disabled from working (Tr. 524-27).  Thus, Dr. Hopkins opined in the Questionnaire that the plaintiff can sit and stand/walk for less than 2 hours each during a workday; and, after sitting for thirty minutes, the plaintiff would need to walk for ten minutes (Tr. 525-26). Further, Dr. Hopkins opined that the plaintiff could rarely lift ten pounds, rarely look up or down, and had significant limitations on reaching, handling and fingering with her right extremity (Tr. 526-27). Dr. Hopkins also opined that the plaintiff will be absent about four days monthly due to her impairments (Tr. 527).  Dr. Hopkins opined that these limitations applied since July 23, 2012, the date he completed the Questionnaire (id.).

Dr. Hopkins attributed these limitations to several diagnostic codes (e.g., "723.1"), which refer to pain in the cervical, lumbar and thoracic spines, and headaches (Tr. 524).  See www.ic9data.com.  Dr. Hopkins does not identify any objective evidence, such as an MRI or X-ray, showing any spinal impairments to support his opinion of disabling limitations (see id.). Rather, he bases his opinion upon clinical findings of hypertonicity of the muscles and the alleged elicitation of pain from the plaintiff upon certain

movements (id.). Dr. Hopkins added that emotional factors contribute to the severity of the plaintiff's symptoms and functional limitations (Tr. 525).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Initially, it is noted that, contrary to the plaintiff's argument, Dr. Hopkins is not a "treating physician" (Doc. 19, p. 15). Thus, as the law judge noted in the decision, Dr. Hopkins is a chiropractor (Tr. 59). Therefore, Dr. Hopkins is not considered an "acceptable medical source," and his opinion is not entitled to the weight afforded a treating physician. See 20 C.F.R. 404.1513(a), 416.913(a) (excluding chiropractors from the list of "acceptable medical sources"); Crawford v. Commissioner of Social Security,

363 F.3d 1155, 1160 (11th Cir. 2004); Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999).[6]

Nonetheless, the law judge weighed Dr. Hopkins's opinion of disabling limitations as if he were a medical doctor (Tr. 61). Thus, the law judge stated (id.):

> I gave little weight to the RFC completed by Dr. John W. Hopkins on January 23, 2012. (Exhibit 19F). Within his assessment, Dr. Hopkins concluded that the claimant was capable of a sedentary level of exertion. His conclusion in this analysis belies his treating notes and earlier opinions that the claimant was capable of work at light duty. Exhibit 19F [the Physical Residual Functional Capacity Questionnaire] is not supported by the record. Moreover, his treating notes as well as the records from Good Samaritan Clinic provides a better representation of the claimant's abilities. (Exhibit 18F). Consequently, I was not able to accord his medical opinion controlling weight. Controlling weight is the term used in 20 CFR 404.1527(d)(2) and 416.927(d)(2) to describe [ ] an opinion by a medical source, which is supported longitudinally by treating records, and expresses a supported opinion based on evidence.

---

[6]Furthermore, Dr. Hopkins gave his opinion of disabling limitations based on a twenty-minute appointment with the plaintiff one and one-half years after he had ceased treating her (Tr. 524). Therefore, Dr. Hopkins also lacks the longitudinal history to opine on the plaintiff's condition as of January 2012, which is one of the reasons for deferring to the opinions of treating physicians. See 20 C.F.R. 404.1527(c), 416.927(c).

The law judge also added that the residual functional capacity she adopted is more consistent with the findings of the consultative examiners (id.). This explanation provides good cause for discounting Dr. Hopkins's opinion. See Lewis v. Callahan, supra. Moreover, the determination is supported by substantial evidence.

In the first place, Dr. Hopkins's assessment is conclusory, and that alone provides a recognized basis for discounting the Questionnaire. Id.; Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11th Cir. 2007); see, e.g., Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (law judge provided good cause to reject the treating physician's opinions stated in forms that did not reference his treatment records or adequately explain his opinions). Thus, Dr. Hopkins's vague diagnoses of back and neck pain do not meaningfully explain his opinions of debilitating functional limitations. See, e.g., Longworth v. Commissioner of the Social Security Administration, 402 F.3d 591, 596 (6th Cir. 2005) (physician needs to translate how abnormal clinical findings affect functioning). Such an explanation is critical in this case where there is little objective evidence of significant back abnormalities.

Furthermore, not only did Dr. Hopkins fail to justify his extreme opinions, Dr. Hopkins's treatment notes do not support them (see Ex. 5F). Thus, Dr. Hopkins's treatment notes do not include any disabling restrictions on the plaintiff's functioning. See Vesy v. Astrue, 353 Fed. Appx. 219, 223 (11th Cir. 2009) (treating physician's treatment notes did not suggest claimant was as limited as physician later opined). Additionally, the law judge correctly pointed out (Tr. 59, 60) that Dr. Hopkins's "return to work" statements, which release the plaintiff to work and to work out at a fitness center (Tr. 397, 398), are inconsistent with Dr. Hopkins's opinion in the Questionnaire that the plaintiff is essentially disabled.

The law judge also found that Dr. Hopkins's opinions of extreme limitation are not supported by the objective evidence and other medical evidence of record (Tr. 61), and substantial evidence also supports that conclusion. See Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1159 (treating physician's report "may be discounted when it is not accompanied by objective medical evidence"); Reynolds-Buckley v. Commissioner of Social Security, 457 Fed. Appx. 862, 864 (11th Cir. 2012) (good cause to afford less weight to a treating physician's opinion when the

evidence supported a contrary finding). Thus, as the law judge noted, the record contains no evidence of diagnostic testing, such as an MRI, to support the plaintiff's claim of a debilitating back or neck impairment (Tr. 60, 477).

The law judge aptly noted that no other physician opined that the plaintiff has disabling functional limitations (see Tr. 58, 61). To the contrary, consultative examiner Dr. Anand Rao opined that the plaintiff "does not have significant disability" based on his observations that the plaintiff was intact neurologically, had normal upper body musculature, normal range of motion in the cervical spine, 5+ motor strength in all extremities, normal gait, and normal fine finger movements, and did not have edema, cyanosis, or clubbing (Tr. 478). Although Dr. Rao also observed that the plaintiff had right side weakness and mild to moderate back problems, Dr. Rao opined that those impairments may be accommodated by precluding her from doing "very heavy work which requires lifting or long periods of standing" (Tr. 479).

Additionally, the plaintiff was regularly treated at Good Samaritan Clinic for various ailments (see Ex. 18F, Tr. 501-22). The treatment notes do not reflect complaints of back pain or diagnoses of neck

-31-

or back impairments (id.). Further, on examination, the plaintiff was able to "sit, stand, walk easily" and had no edema (see Tr. 518, 520).

Moreover, psychologist Dr. Abraham observed during the consultative psychological evaluation that the plaintiff's posture was good, her gait was unremarkable, and she did not display any significant problems with motor functioning (Tr. 481). Notably, the plaintiff told Dr. Abraham and Dr. Henley that her main reason for applying for disability was her mental health problems (Tr. 407, 481).

Additionally, the law judge aptly noted that the plaintiff does not take prescription medication for her impairments, and she has not had any surgery (Tr. 60; see Tr. 477). Those circumstances also undermine Dr. Hopkins's opinion that the plaintiff suffers from disabling pain (see Tr. 524). See 20 C.F.R. 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

Significantly, Dr. Hopkins's opined limitations are even inconsistent with the plaintiff's reports of her daily activities. Thus, as the law judge noted, the plaintiff denied having any problems with personal care or completion of household chores (Tr. 57; see Tr. 409, 482). Furthermore, the plaintiff reported to Dr. Abraham that her daily routine consists of "riding

the motorcycle, going to church, and ... school" (Tr. 482; see also Tr. 409, 541). Thus, the plaintiff's daily activities contradict Dr. Hopkins's opinion that the plaintiff is essentially disabled. See Forrester v. Commissioner of Social Security, 455 Fed. Appx. 899, 901 (11th Cir. 2012) (a law judge does not need to give a treating physician's opinion considerable weight if the claimant's daily activities contradict the opinion).

Finally, it is noted that Dr. Hopkins's opinion that emotional factors contribute to the plaintiff's functional limitations is clearly beyond his expertise. 20 C.F.R. 404.1527(c)(5), 416.927(c)(5). In sum, the law judge had ample basis for discounting Dr. Hopkins's opinion of disabling limitations in the Questionnaire.

The plaintiff argues that the law judge's explanation for discounting Dr. Hopkins's opinion is erroneous because Dr. Hopkins's opinion in the Questionnaire that the plaintiff could rarely lift 10 pounds and never lift 20 pounds is not inconsistent with Dr. Hopkins's April 2010 "return to work" statement that restricted the plaintiff from lifting more than 15 pounds (Doc. 19, pp. 16, 17). Those opinions are not necessarily consistent. Regardless, the plaintiff misses the law judge's point, which is that Dr.

Hopkins previously opined that the plaintiff could work, and one and one-half years after he ceased treating the plaintiff he inexplicably opines that the plaintiff is essentially disabled from working (Tr. 61 (Dr. Hopkins's "conclusion in this analysis belies his treating notes and earlier opinions that the [plaintiff] was capable of work at light duty")). Importantly, Dr. Hopkins gave no explanation for the alleged worsening of the plaintiff's functioning.

Additionally, the law judge was not compelled to accept Dr. Hopkins's opinion in the Questionnaire that the plaintiff could not lift 20 pounds simply because it was consistent with Dr. Hopkins's opinion in a prior "return to work" statement. Thus, the extreme and medically unsupported opinion of functional limitations in the Questionnaire undermines the reliability of the Questionnaire as a whole. Furthermore, the law judge also rejected the Questionnaire because Dr. Hopkins's treatment notes did not support the opined limitations, and the responses in the Questionnaire were "not supported by the record" as a whole (id.). As discussed supra, pp. 30-32, that finding is supported by substantial evidence.

The plaintiff argues further that the law judge stated erroneously that Dr. Hopkins's treatment notes support the finding that the plaintiff could

perform light work (Doc. 19, pp. 17-18).  Dr. Hopkins's treatment notes do not contain any functional limitations that limit the plaintiff to less than light work (see Ex. 5F).  Rather, the plaintiff premises this contention on Dr. Hopkins's "return to work" statement of April 2010 that restricted her from lifting over 15 pounds (Doc. 19, p. 17).  However, that is not a treatment note; it is a temporary work limitation based on "injuries sustained in a motorcycle accident" that occurred several years earlier (Tr. 397).

The plaintiff also argues that Dr. Hopkins's opinion is entitled to more weight than consultative examiner Dr. Rao's opinion because Dr. Hopkins saw the plaintiff regularly from 2007 until 2010 and, therefore, he is "in the best position to assess [the plaintiff's] restrictions" (Doc. 19, p. 16). However, Dr. Hopkins opined on the plaintiff's condition as of the date he completed the Questionnaire, which was one and one-half years after Dr. Hopkins last treated her.  Further, Dr. Hopkins stated that the functional limitations opined in the Questionnaire were based on "20 min[utes]" of contact (see Tr. 524).  Therefore, the contention that Dr. Hopkins was in the best position to opine on the plaintiff's limitations as of January 2012 is unpersuasive.

Furthermore, it is clear that the opinion of a consultative examiner may be accepted over that of a treating doctor when good cause is stated for discounting the treating physician's opinion. See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); Forsyth v. Commissioner of Social Security, 503 Fed. Appx. 892, 893 (11th Cir. 2013); see also Forrester v. Commissioner of Social Security, supra, 455 Fed. Appx. at 901-02 (the law judge may reject any medical opinion if the evidence supports a contrary finding). That principle has even more force in this case, where the treating source is not a medical doctor, and the consultative examiner is.[7] In sum, the plaintiff failed to show that the law judge erred in discounting Dr. Hopkins's opinion of disabling functional limitations in the Questionnaire.

D. The plaintiff's final argument is that the law judge failed to include in the residual functional capacity all of the plaintiff's functional limitations (see Doc. 19, pp. 18-19). Specifically, the plaintiff argues that the law judge should have incorporated into the residual functional capacity

---

[7]The plaintiff also seems to assert that, since the law judge did not state he was according Dr. Hopkins's opinion less weight because Dr. Hopkins is a chiropractor, that fact cannot be considered (Doc. 19, p. 17). This brings to mind Abraham Lincoln's classic point that, even if one calls a horse's tail a leg, the horse will still have only four legs. Similarly, even if Dr. Hopkins is called a medical doctor, he is still simply a chiropractor and his opinions are weighed accordingly.

-36-

restrictions on the use of her right arm, based upon Dr. Rao's comments that the plaintiff had some weakness on the right side near her shoulder and that her grip strength was restricted in the right hand (id.; see Tr. 479).

However, Dr. Rao did not opine that limitations specific to the plaintiff's right arm should be imposed, and Dr. Rao certainly did not opine, as the plaintiff argues, that the plaintiff could "only occasionally us[e] her right upper extremity" (id., p. 19). Rather, the majority of Dr. Rao's physical examination of the plaintiff was normal and, consequently, Dr. Rao opined that the plaintiff "can do most of the physical work" (Tr. 478, 479). Further, Dr. Rao opined that the right side weakness and back problems can be accommodated by restricting the plaintiff from "very heavy work which requires lifting or long periods of standing" (Tr. 479).

Significantly, the law judge gave great weight to Dr. Rao's opinion, stating (Tr. 60):

> Dr. Anna [sic] Rao completed a CE [consultative examination] dated October 27, 2010, in which she noted that the claimant demonstrated some weakness on her right side near the right shoulder. (Exhibit 12F). She also noted that the claimant's grip strength was restricted on the right side. She observed that the claimant had positive straight leg raises suggesting mild to moderate back problems.

> Dr. Rao concluded that while the claimant was not capable of very heavy work which requires lifting or standing because of her back problems she is capable of most physical work. I considered these clinical signs. They are reflected in the residual functional capacity I adopted which gives some credence that the claimant may have some difficulty using her arms and shoulders and may need to sit at times.

Thus, the law judge's limitation of the plaintiff to a range of light work accommodates the plaintiff's right extremity weakness, and Dr. Rao's opinion does not compel additional functional limitations. See Adefemi v. Ashcroft, supra.

The plaintiff also cites in support of additional functional limitations her testimony that she had trouble lifting over 15 pounds, and that she generally had difficulty with the right side of her body (Doc. 19, p. 18). However, the law judge did not fully credit the plaintiff's testimony (Tr. 60), and that determination is unchallenged by the plaintiff. Consequently, the law judge was not required to include in the residual functional capacity limitations based on the plaintiff's discredited testimony. See Crawford v. Commissioner of Social Security, supra, 363 F.3d at 1160. Therefore, this argument is meritless.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this ⟋7ᵗʰ day of September, 2014.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE